UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 21-24055-CIV-GOODMAN
[CONSENT CASE]

EVELYN DOMINGUEZ,

      Plaintiff,

v.

ROBERT J. FIORE P.A., et al.,

      Defendants.

_____/

## <u>ORDER ON FLSA ATTORNEY'S FEES AND COSTS</u>

    *"Trying to take back hurtful words said in anger is like trying to retrieve the bullets after you've fired the gun."*

      -   Rashida Rowe

    *"It takes two to tango."*

      -   Well-known proverb

    This Order on attorney's fees concerns a distressing scenario where Plaintiff's counsel and the Defendant, an attorney, engaged in tactics which can fairly be described as akin to pouring gasoline on a fire. Not surprisingly, this triggered ill will, which, in turn, led to attacks and insults, which, in turn, generated superfluous litigation. This Order is a fact-intensive ruling, so it will provide a comprehensive dive into the pool of hostility.

Evelyn Dominguez ("Dominguez" or "Plaintiff") sued her former employers, Robert J. Fiore, P.A. and Robert Joseph Fiore, Esq. (collectively, "Fiore" or "Defendants"), for unpaid overtime under the Fair Labor Standards Act ("FLSA"). [ECF No. 1]. The parties settled the damages portion of Plaintiff's claim, and the Court issued an Order approving the partial settlement pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). [ECF No. 25].

Plaintiff filed a motion for attorney's fees and costs and Defendant filed a response in opposition. [ECF Nos. 33; 37].[1] For the reasons discussed in detail below, the Court will **grant in part and deny in part** Plaintiff's motion.

## I.   Background and Procedural History

Dominguez worked as a legal assistant[2] at Defendants' law firm from October 2015 to April 2021. [ECF No. 36-1, ¶ 4]. When Dominguez decided to leave her employment, the parties exchanged hostile verbal and written communications (i.e., telephone calls, text messages, and emails) which culminated in a cease-and-desist email from Attorney Fiore to Dominguez on April 27, 2021. [ECF No. 33-1, p. 94].

---

[1]   The parties have each filed redacted and unredacted (filed under seal) versions of their filings in support of (or in opposition to) Plaintiff's fees and costs request. [ECF Nos. 26-27; 33-34; 37]. In this Order, the Court will refer to only the publicly available versions of these filings. Therefore, this Order will not be filed under seal.

[2]   Although Defendants did not file an answer, they consistently maintained in communications with opposing counsel that Dominguez's job duties qualified her as an exempt employee under the administrative exemption.

In this email, Fiore accused Dominguez of engaging in various computer-related crimes and "harassing conduct" and threatened to file a "Report and Complaint with law enforcement," "pursue all other necessary legal action," and contact her "current employer." *Id*. Dominguez denies engaging in any illegal activity or that she was working for a second employer while still employed by Fiore. She also accuses Attorney Fiore of his own harassing and threatening conduct. [ECF No. 33, pp. 7-9].

On October 12, 2021, Plaintiff signed an engagement agreement with attorney Keith M. Stern of the Law Office of Keith M. Stern, P.A. [ECF No. 33-1, pp. 40-42].

On November 18, 2021, Dominguez filed a one-count complaint seeking to recover unpaid overtime under the FLSA. [ECF No. 1]. Stern did not contact Fiore to attempt to resolve Plaintiff's claim before filing suit.

Approximately five days later, Fiore's first counsel[3] contacted Stern by email. [ECF No. 33-1, p. 56]. Stern described his working relationship with Fiore's first counsel as "amicable," having been on opposite sides in other FLSA cases over the course of six years. [ECF No. 33-1, ¶ 16].

---

[3]     Fiore was initially represented by the law firm of Weiss Serota Helfman Cole & Bierman, P.L. [ECF No. 7]. On December 27, 2021, the law firm of Feiler & Leach, P.L. filed a stipulation for substitution of counsel, which the Court granted on January 5, 2022. [ECF Nos. 10-11].

In the email, Fiore's counsel advised Stern that he was authorized to accept service and asked Stern for his "availability over the next few days for a preliminary discussion regarding possible early resolution." [ECF No. 33-1, p. 56].

Stern responded to that email that same morning, attaching a copy of the Notice of Court Practice in FLSA cases, which Judge Moreno had issued in the case. *Id.* at 55-56. He stated that he was working throughout the day on other matters, but asked Fiore's counsel to provide "some options for a good time to talk."

Stern also explained why he did not provide pre-suit notice to Defendants:

> While we'll often pre-suit cases like Dominguez's against a lawyer/law firm, **because she and Fiore had such extensive direct communication months ago that ultimately was unproductive—before I was retained—it was necessary to just file suit ultimately for her**, so while I'm sure I don't know "everything," I'm aware of a lot of history.

*Id.* (emphasis added).

That same day, the attorneys spoke for approximately 30 minutes. [ECF No. 33-1, ¶ 17]. According to Stern's declaration, counsel discussed: (1) Fiore's "'very strong' beliefs and views" about Dominguez not working the hours she claimed, not being owed any overtime, and being subject to the administrative exemption; (2) Defendants' intent to challenge enterprise coverage; (3) Fiore's "shock" when learning of Dominguez's lawsuit, given Attorney Fiore's cease and desist email to Dominguez (4) Dominguez's response to allegations of hacking, not having worked for another employer since leaving Fiore,

and her health issues; and (5) the possibility of an early mediation, to avoid unnecessary fees. *Id.*

Approximately six days later, Plaintiff's counsel sent a follow up email to Fiore's counsel. A copy of this email was not included in Plaintiff's 301 pages of exhibits or in Defendants' 95-page response.

According to Stern's declaration, the purpose of this email was:

to check on the status of: (a) Defendants' Counsel providing a waiver of service form while Plaintiff's formal service attempts through the process server had been put on hold; (b) Defendants' settlement and mediation position, at which time [Fiore's counsel] apologized for the passage of time without Defendants' Counsel having an update to communicate on this case and [Fiore's counsel] notified Plaintiff's [c]ounsel that: (i) Defendants' Counsel had gotten "sidetracked with other things" with Defendants "but. . . . believed the attorneys might want to chat again about the stew of issues involved here"; and (ii) [Fiore's counsel] did not believe this case could be mediated before the end of December 2021.

*Id.* at ¶ 18.

The next email exchange highlighted in the parties' filings occurred on December 2, 2021. This batch of emails could fairly be described as acerbic, antagonistic, and vitriolic. A substantial part of the nastiness here came from Stern, but, as noted above, the first salvo fired in the acrimonious exchanges was fired by Fiore, who threatened to report Dominguez to law enforcement.

The emails filed with the Court reflect that the parties' exchange began at 5:20 PM, when defense counsel sent an email to Stern attaching a "letter and documentation for

[Stern's] consideration." [ECF No. 33-1, p. 59]. The attachment consisted of a three-page letter and 20 pages of supporting documents. *Id.* at pp. 60-82.

The letter stated that defense counsel was "very concerned" that Stern had "not received a clear picture of the facts surrounding Ms. Dominguez's employment and resignation from Robert J. Fiore, P.A." *Id.* at 60. It stated that Defendants were providing Dominguez with "an early opportunity to reconsider pursuit of this case." *Id.*

It accused Dominguez of violating the Federal Computer Fraud and Abuse Act, Florida's Computer Abuse and Data Recovery Act, and Florida tort law by making numerous attempts to access Fiore's computer system and Attorney Fiore's personal iPhone and iCloud account. *Id.* It included a timeline of the alleged cyber-attacks, which "[would] be the subject of Mr. Fiore's Counterclaim against Ms. Dominguez should the case proceed." *Id.* It accused Dominguez of "serious misconduct" which created "significant exposure as a result of her (and perhaps a co-conspirator's) attempts at unauthorized access to the firm's email and file servers, as well as Mr. Fiore's personal devices." *Id.*

The letter referred to Dominguez's overtime claim as "outlandish" and "the subject of intense scrutiny" given that Dominguez had attempted to negotiate an independent contractor agreement with Fiore in April 2021, where she would work no more than 24 hours per week. *Id.* at 61. The letter referred to Dominguez taking a "combative, dissatisfied tone" in emails to Attorney Fiore, which were in juxtaposition to

the positive sentiments she had expressed between October 2020 to April 2021, just before her resignation. *Id.*

It also attributed "Dominguez's seemingly overnight change in attitude" to a second job she had purportedly obtained in early 2021, as a government I.T. Specialist. *Id.*

The letter stated there was no evidence of a willful FLSA violation and that Dominguez's claim of 65 hours per week, "lack[ed] credibility" given that Fiore's practice had "basically come to [a] halt" due to court closures and lockdowns as a result of the pandemic. *Id.* Finally, the letter closed by noting that there were "significant issues" barring recovery, "includ[ing] jurisdictional issues under both Enterprise and Individual Coverage . . . and the [a]dministrative [e]xemption." *Id.* at 62. The letter ended by stating, "[t]his case is about to heat up significantly. Please get back to us as soon as possible." *Id.*

Evidently taking offense to the letter, Stern responded eight minutes later by stating that he "regret[ted] [that Attorney Fiore] ha[d] **elected to lie** and act like a **further bully**," that Stern and his client "[would] not be entertaining his **disgusting conduct**," and calling Attorney Fiore "an **embarrassment to the profession**." *Id.* at 85 (emphasis added).

Two minutes later, defense counsel sent a response email expressing surprise at Stern's tone and asking for clarification. *Id.* at 84 ("That is not at all the response I anticipated. Can you please tell me what you're interpreting as 'lies'?").

Stern doubled down on his assessment, stating:

**He's bold face lying** about Dominguez's hours worked, her job duties, the events that occurred, and on & on.

Just as Fiore apparently thought when he tried his earlier bully move from his 4/27/21 "cease and desist" email to Dominguez, it is now plain to me that Fiore thinks **he's going to not only push Dominguez around again but intimidate me too. His choices are most unfortunate**.

*Id.* at 84 (emphasis added).

According to Stern's declaration, Defendants' counsel responded to this email at 6:18 PM, by stating, "I think it's unfortunate that this is your interpretation." [ECF No. 33-1, ¶ 20]. A copy of the 6:18 PM email, is not included in the parties' filings.

Stern states in his declaration that he perceived the December 2, 2021 letter:

as a full frontal attack by Defendants into trying to scare Ms. Dominguez to dismiss this action entirely in early December 2021—and taking nothing from this action—or facing the wrath of her ex-employer, a prominent lawyer in Miami with substantial financial resources and more than thirty-five (35) years of experience and connections in the metropolitan legal community, bringing all of Defendants' weight to bear down upon Plaintiff.

*Id.* at ¶ 20.

Even so, Stern's harsh tone and personal attacks on Attorney Fiore's character were unfortunate, unduly insulting and overly aggressive. They certainly did not further his client's interests.

The following morning, Fiore's counsel tried to lower the temperature by sending a conciliatory email to Stern, suggesting there were multiple versions of the story and that they should talk:

We should probably chat. Obviously, our clients do see things differently, and through different lenses. But, as attorneys, we both know there are often 3 sides to a story. **It's one thing to stake our positions, but your email . . . is uncharacteristically strong, and I respect your integrity. If there are indisputable facts I should be aware of, please let me know**.

[ECF No. 33-1, p. 84 (emphasis added)].

The emails filed with the Court do not include Stern's direct response to defense counsel's invitation to talk. However, it appears that the attorneys had patched things up by that evening and were discussing the possibility of an early mediation. *Id.* at 87.

The docket reflects that on the same day, December 3, 2021, defense counsel entered his appearance on behalf of Fiore and that Plaintiff filed her statement of claim. [ECF Nos. 7-8].

Plaintiff's statement of claim sought liquidated damages in the amount of $86,625.00 in unpaid overtime wages, if calculated at a time-and-a-half rate, or alternatively, $17,769.23, if calculated at a half-time rate. [ECF No. 8, p. 3]. Additionally, Stern sought $5,367.50 in attorney's fees for 11.30 hours of work at an hourly rate of $475.00. *Id.*

Stern states in his declaration that he and defense counsel spoke over the phone for approximately one hour on December 8, 2021. [ECF No. 33-1, ¶ 24]. The discussion included Fiore's defense to enterprise coverage, the FLSA administrative exemption, and Dominguez's insistence that Defendants' computer crime accusations were based on "wholly erroneous facts." *Id.*

Two days later, on December 10, 2021, defense counsel sent an email to Plaintiff's counsel conveying a settlement offer. *Id.* at 147. The email stated that Fiore "ha[d] made a business decision to resolve the case by tendering to [Dominguez] the sum of $17,769.23 as full and final satisfaction of her claim. *Id.* In addition to this amount, Defendants would pay Stern's "attorneys' fee totaling $5,367.50 and costs totaling $400." *Id.* These funds would be tendered by the next business day. *Id.* Defense counsel further stated he would like "to memorialize the resolution with a formal confidential settlement agreement with mutual non-disparagement clauses." *Id.*

Stern responded at 11:01 PM, stating that "[w]hile Plaintiff and Defendants obviously disagree on the amounts being sought in this case and due & owing to Dominguez, I'm pleased it appears your client is interested in making a settlement offer" and indicated that the parties could speak over the weekend. *Id.*

The parties spoke on Sunday, December 12, 2021, about "settlement bracketing" and the need to obtain a mutual release from Defendants given the threatened counterclaims and Attorney Fiore's "April 2021 . . . [threats] of bringing civil and criminal complaints against Ms. Dominguez." *Id.* at ¶ 28. That afternoon, Stern sent a bracket counter proposal, "mutual releases, confidentiality, non-disparagement, and a neutral reference provision from Defendants to Plaintiff." *Id.* at 150.

The parties spoke again over the telephone on December 15, 2021 for approximately 30 minutes. *Id.* at ¶ 30. Defense counsel informed Stern that "while

10

Defendants were willing to consider providing a potential mutual release to Ms. Dominguez, Defendants were unwilling to increase the monetary amount Defendants would agree to pay beyond Defendants' December 10, 2021 offer." *Id.*

Later that day, defense counsel emailed Stern, attaching the December 10, 2021 settlement offer, and stating:

> this settlement offer will remain open for one additional week until close of business on December 22, 2021, after which the offer will be withdrawn automatically if not unconditionally accepted in writing. Please note the offer now includes a release by my client of his claims against your client as part of a full and final settlement. A confidential settlement agreement containing mutual general releases and non-disparagement clauses are also material non-monetary terms.
>
> ***
>
> My client is resolute in his belief that this is a fair and reasonable resolution of a case that never should have been filed. **We urge your client to give her utmost consideration to this opportunity to close the case now and move on with her career and life without the significant stress and legal exposure from litigation**.

*Id.* at 155 (emphasis added).

On December 17, 2021, Fiore responded to Dominguez's statement of claim. [ECF No. 9]. Fiore noted that the statement of claim failed to comply with the Notice of Court Practice in FLSA Cases [ECF No. 5] because it did not "identify the actual hours of overtime claimed during any specific week over a 3-year period" or "include an estimate of which . . . weeks included overtime." *Id*. at 1.

The response also alleged that Dominguez could not show a willful violation, disputed the hours worked by Plaintiff, asserted that Plaintiff's salary was based on a fluctuating workweek, noted that she had received a raise in August 2019, denied Dominguez was owed any wages or was entitled to any damages, and claimed Plaintiff never worked in excess of 40 hours during *any* workweek. *Id.* at 2-3. Fiore's response further challenged the applicability of both enterprise coverage and individual coverage, asserted Plaintiff was an exempt employee, argued Dominguez was not entitled to liquidated damages because Fiore had acted in good faith and Plaintiff had never told Fiore, during her employment, that she believed she was owed compensation. *Id.* at 3-4. The response also included its own calculation of what Dominguez -- "at most" -- would be owed: $2,002.60. *Id.* at 4.

Counsel spoke by telephone again in the morning of December 23, 2021. [ECF No. 33-1, ¶ 33]. During this conversation, which lasted approximately 19 minutes, Fiore's counsel conveyed a new settlement offer, which included mutual releases of all claims but was exclusive of attorney's fees. *Id.* Stern attests in his declaration that defense counsel

> "hoped" to subsequently obtain further authority from Defendants to also make an offer to resolve Plaintiff's attorneys' fees and costs, [but that] Defendants' [c]ounsel did not have specific authorization from Defendants for such an offer and Defendants intended to proceed with serving an Offer of Judgment pursuant to Fed. R. Civ. P. 68 if no direct resolution was reached within the next several days.

*Id.*

Later that morning, defense counsel sent an email to Stern confirming the amount offered to settle Dominguez's claim and stating he was confident Defendants could include fees up to a certain number, but if that was "an impossibility, then the offer [was] to have the Court decide the fees." *Id.* at p. 176. The email further provided that "[the] agreement would have to be consummated by January 31, 2021, and would include mutual releases, confidentiality, non-disparagement, and a neutral reference." *Id.* In subsequent email exchanges, the parties discussed the deadline for accepting the offer and consenting to magistrate judge jurisdiction so that the settlement agreement would not need to be filed publicly on the docket. *Id.* at 175-76.

That afternoon, Stern sent an email to Fiore's counsel containing "a new, compromise bracket proposal," with the same terms of "a written [a]greement to be executed by the parties containing mutual releases, confidentiality, non-disparagement, and a neutral reference provision from Defendants to Plaintiff [and] prompt payment by Defendants—with the parties seeking court approval by consent before [the Undersigned]." *Id.* at 179.

Fiore's counsel responded by stating that he had relayed the information to his clients, but that they "sincerely believe[d] [Fiore] ha[d] put his best foot forward" in making the offer defense counsel had relayed that morning. *Id.* at 181. Defense counsel added that Fiore had instructed him to serve the Rule 68 offer of judgment and that Defendants' offer would remain open through December 31, 2021. *Id.*

In response to that email, Stern called defense counsel "[i]n an abundance of caution, and to ensure that there had been no misunderstanding by Defendants." *Id.* at ¶ 37. Defense counsel "confirmed that although Defendants had clearly understood this case could be resolved for a total number (inclusive of all consideration to resolve Plaintiff's claims for overtime wages, liquidated damages, attorneys' fees, and costs) *below* the . . . midpoint of Plaintiff's proposed bracket, Defendants had rejected Plaintiff's proposal." *Id.* (emphasis in original).

That same day, defense counsel emailed Stern the offer of judgment. *Id.* at 183-86. The offer of judgment remained open until January 6, 2022. *Id.* at 185.

In the interim, on December 27, 2021, Fiore's new counsel filed a stipulation for substitution of counsel. [ECF No. 10]. On that same day, Fiore's replacement counsel sent an email to Stern asking if counsel could speak the next day. *Id.* at 188-89. Stern responded by stating that he was out of town, provided his cell phone number, and asked for defense counsel's availability. *Id.* at 188.

Counsel spoke the next day for approximately 17 minutes. *Id.* at ¶ 40. Stern attests in his declaration that the parties spoke about:

> the history of the parties' settlement offers; continued representations by Defendants about purported Enterprise Coverage issues for one or more years of the statute of limitations period; the nature of the aggressive action previously threatened by Mr. Fiore and Defendants' continuing intention to file [c]ounterclaim(s) against Ms. Dominguez; and the opportunity for the parties to explore further compromise settlement discussions to produce closure for both Plaintiff and Defendants.

*Id.*

That day, defense counsel texted Stern a new offer, which included overtime wages, liquidated damages, attorney's fees, and costs. *Id.* at ¶ 41. The attorney's exchanged additional text messages. *Id.*

Stern discussed the settlement terms with Dominguez that day. *Id.* at ¶ 42.

The next morning Stern emailed defense counsel, communicating a "final offer" which would resolve "all claims for overtime wages, liquidated damages, attorney's fees, and costs." *Id.* at 191.

That same day, defense counsel rejected Plaintiff's offer, stating he was "quite clear about [Fiore's] bright line in this matter." *Id.* The email further stated that defense counsel was "a little surprised that Ms. Dominguez would undertake the risks and inconvenience she [would] absolutely face now over such a small difference, especially given the weakness of her hours claim due to COVID and her hacking exposure," but stated that Defendants' offer remained open until 5:00 PM the next day. *Id.*

On January 1, 2022, defense counsel emailed Stern expressing his "disappoint[ment] and surprise[] that [Stern] and [his] client declined [Defendants' offer]" and asked for dates in the second and third week of January to take Dominguez's deposition duces tecum. *Id.* at 194. The email further stated that Dominguez would "need to have all of her documents, including her tax returns from the covered period, for the

deposition," noting that Fiore would not be consenting to magistrate judge jurisdiction and "Judge Moreno moves cases quickly." *Id.*

Stern responded to this email on January 5, 2022. *Id.* at 196. He did not believe, "[a]s a practical matter," that Dominguez and Fiore's depositions could be done until February, but stated he was available for an early Rule 26 conference. *Id.*

The next day, the parties had the Rule 26 conference. *Id.* at ¶ 46.

The parties spoke again on January 7, 2022. *Id.* at ¶ 47. Defense counsel told Stern that "Defendants [had] changed their mind" and "had . . . authorized [defense counsel] to communicate a new settlement offer to Plaintiff[.]" *Id.* The parties would settle Plaintiff's attorney's fees and costs separately, and "if no agreement could be reached on the amount of Plaintiff's attorneys' fees and costs, the amount of Plaintiff's fees and costs would be determined by the Court." *Id.*

Stern offered to provide his billing records to Defendants if Dominguez accepted the settlement. *Id.* Dominguez accepted the new settlement offer on January 7, 2022. The next day, Stern sent an email to defense counsel stating that Dominguez had confirmed the settlement amount, exclusive of fees and costs, and attached a draft Confidential Settlement Agreement and Mutual Release, Stern's billing records ($12,730.00 (26.80 hours times $475.00) plus $400.00 in costs), a draft notice of consent to proceed before a United States magistrate judge, and a draft notice of settlement. *Id.* at 201-210.

16

Stern spoke to defense counsel later that afternoon and discussed the settlement terms, "but Defendants were unwilling to even discuss a resolution of Ms. Dominguez's attorneys' fees and costs." *Id.* at ¶ 51.

On January 11, 2022, Defendants sent revisions to the settlement agreement. *Id.* at 212-17. Plaintiff responded with her own revisions. *Id.* at 219.

On January 14, 2022 at 2:55 PM, defense counsel sent "the final draft that [his] clients [were] willing to sign." *Id.* The parties exchanged additional emails concerning the terms of the settlement that day and spoke on the phone while Stern made tracked changes to the document on the computer. *Id.* at 233-34, 236; *id* at ¶ 57. At 5:02 PM, Stern sent "what [he] believed was the parties' final version of the Settlement Agreement." *Id.* at ¶ 57.

That same day, Judge Moreno entered an Order requiring Plaintiff to amend her statement of claim. [ECF No. 12]. The Order required Dominguez to "file an Amended Statement of Claim specifically stating the total amount of unpaid wages, the calculation of such wages (number of hours multiplied by the rate of pay *along with specific corresponding dates such wages were earned*), and the nature of the wages [by] no later than January 19, 2022." *Id.* (emphasis in original).

On January 15, 2022, defense counsel sent back the settlement agreement signed by Fiore and asked that Dominguez return a signed copy. [ECF No. 33-1, p. 244]. Stern responded that same day, stating that the document was not what Stern had sent to

defense counsel "yesterday from [their] conversation" and that Dominguez was not going to agree to the changes. *Id.* at 253. Defense counsel responded approximately fifteen minutes later stating in part, that "[t]he essential terms [were] agreed and [Dominguez could] sign it or not." *Id.* at 252.

Stern sent an email stating that Fiore "[didn't] get to dictate terms" and that "Defendants seem continually interested in playing some game." *Id.* Defense counsel sent a response, stating "You're **playing games** not us. Now you are just milking. Let's see what the judge says. Far as I am concerned we are done." *Id.* at 251-52. (emphasis added).

Stern disputed this characterization in a response email:

Milking what? Its [sic] us who made repeated compromise offers, including a compromise for fees/costs, and Defendants who have chosen to subsequently go round [and] round in circles while Defendants elected to not discuss fees despite me voluntarily having sent you my time records a week ago or whenever it was.

Please refrain from burning the good faith steps that you and I have undertaken, as it's a preventable mistake simply because your client chose to backslide on terms that were already addressed both in writing and from our discussions—several times—for reasons unknown to me. I know what you and I discussed yesterday, so this isn't fun or productive and I have other things that are much more serious and my client likewise is dealing with real life matters that are pressing.

Feel free to call me on Monday if you choose.

*Id.* at 251. Defense counsel responded, "I'm not buying into your narrative. What I sent you accurately reflects our terms. Happy to talk [M]onday but I really don't understand the hangup." *Id.*

On Monday morning, defense counsel sent an email to Stern stating that he "believe[d] that all essential terms were in fact agreed to and that [the parties] [were] fighting over nothing." *Id.* at 257. The email also discussed three terms in the version signed by Fiore. *Id.* The parties exchanged additional emails and spoke on the phone for approximately 18 minutes about the disputed provisions in the settlement agreement. *Id.* at 255-56; *id.* at ¶ 61. Stern's declaration states that during this conversation, defense counsel conveyed that it was Fiore's intention to argue that Plaintiff should receive no attorney's fees because she had failed to provide pre-suit notice. *Id.* at ¶ 61. During this conversation, Stern suggested revisions to the language of the settlement agreement. *Id.* at ¶¶ 61-62.

Later that morning, Stern sent the settlement agreement with tracked changes. *Id.* at 259. Defendants' counsel responded in the afternoon. *Id.* at 266.

Defense counsel stated that he had "discussed this at length with [Attorney] Fiore and he ha[d] agreed to all of the matters [counsel had] discussed with the exception of the fee language, which [defense counsel believed was] superfluous to the essentials of the deal." *Id.* He further stated that "[t]here [was] no question that [Stern's] fee/cost claim [could] be submitted to the Court in the usual fashion, subject to all objections available to the Defendants. [Defense counsel did not] think that [could] legitimately hold this up." *Id.* at 266. Defense counsel then proceeded to list the five changes made to the settlement agreement. *Id.*

19

The attorneys again spoke on the phone on January 17, 2022 in the afternoon, for approximately 15 minutes and discussed the "zero fee" arguments Fiore would be pursuing and Plaintiff's willingness to settle the fees and costs for a specific range, before the fees issue was litigated in front of the Court. *Id.* at ¶ 64.

On January 18, 2022, Judge Moreno entered an Order appointing a mediator and setting a settlement conference before that mediator on February 28, 2022. [ECF No. 13].

The next day, Stern called defense counsel to discuss the status of Stern's offer to settle attorney's fees and costs, Judge Moreno's mediation Order, and other matters. *Id.* at ¶ 66. Defense counsel informed Stern that "Defendants were not amenable to making any offer." *Id.*

On January 19, 2022, Plaintiff filed her amended statement of claim. [ECF No. 14]. The amended statement of claim sought $15,817.50 in attorney's fees for 33.30 hours of attorney time at an hourly rate of $475.00 plus $400.00 in costs. *Id.* at 4.

The following day, Fiore filed a motion seeking to enforce a settlement agreement purportedly reached between the parties. [ECF No. 15]. The motion referred to Plaintiff's amended statement of claim as "a needless exercise and expenditure of additional time on a case that [was] already settled." *Id.* at ¶ 5.[4]

---

[4]     Plaintiff's amended statement of claim was filed in response to Judge Moreno's Order requiring a more specific statement of claim. [ECF No. 12 ("Plaintiff must file an Amended Statement of Claim specifically stating the total amount of unpaid wages, the calculation of such wages (number of hours multiplied by the rate of pay along with specific corresponding dates such wages were earned), and the nature of the wages no

Fiore's motion further stated that "[o]n January 17, 2022, the parties [had] reached [an] agreement on all of the material terms of the settlement of Plaintiff's claim." *Id.* at ¶ 2. Specifically, the motion stated that the parties had settled the damages portion of Plaintiff's claim and had agreed the "legal fees and costs would be submitted separately to the Court for resolution." *Id.* at ¶¶ 2, 4. The motion explained that it was being filed because Fiore "ha[d] not received back from Plaintiff's counsel the fully executed copy of the Confidential Settlement Agreement and Mutual Release." *Id.* at ¶ 5. The motion also asked that Defendants be relieved from participating in the court-ordered mediation because "[t]here [was] certainly no need to expend additional resources mediating a case that [was] already settled." *Id.* at 3.

On January 25, 2022, Judge Moreno summarily denied Defendant's motion. [ECF No. 16].

---

later than January 19, 2022.")]. However, Fiore argues that Plaintiff should have filed a notice of settlement instead and that Dominguez's decision to "leav[e] out that Plaintiff had already agreed to a settlement of substantially less [than the amount sought in the amended statement of claim]" was a "**glaring omission**." [ECF No. 36, p. 6]. (emphasis supplied).

The Undersigned notes that Stern is not seeking compensation for the time spent preparing the amended statement of claim. *See* [ECF No. 34-1, p. 24 ("[T]he time associated with complying with [the] Court Order is separately identified in Plaintiff's Counsel's . . . time-billing records as Non-Billable, such that the 1.40 hours in total time expended by the undersigned counsel for drafting work on Plaintiff's Amended Statement of Claim is not sought against Defendants in the instant Motion." (emphasis in original))].

The parties continued to exchange emails disputing the attorney's fees language in the settlement agreement, with Defendant persistently arguing that a reasonable attorney's fee in this case was no fees and Plaintiff taking the position that "the material terms the parties agreed upon in early January 2022 entailed an express agreement by Defendants to pay Plaintiff's reasonable attorneys' fees and costs, such that Defendants could of course make any argument they chose to the Court." [ECF No. 33-1 at ¶ 71; *id.* at pp. 273-279].

On January 31, 2022, the parties consented to magistrate judge jurisdiction and Judge Moreno referred the case to the Undersigned for all further proceedings, including trial. [ECF Nos. 17-18].

The Undersigned set this matter for a Zoom trial scheduling videoconference hearing. [ECF No. 19].

On January 31, 2022, the parties participated in a mediation. [ECF No. 20]. As the mediation was concluding, defendant's counsel sent to Plaintiff's counsel a settlement agreement signed by Attorney Fiore on January 27, 2022 (before the mediation), "contain[ing] all of the material terms from the Settlement Agreement." [ECF No. 33-1, ¶ 74]. Dominguez signed the settlement agreement on January 31, 2022. *Id.* at ¶ 76.

Between January 31, 2022 and February 6, 2022, Stern "engaged in numerous settlement communications" with Defendants, using the mediator to try to resolve Stern's

attorney's fees. [ECF No. 33-1, ¶ 77]. However, the parties were unable to resolve this dispute.

The mediator filed a mediation report on February 6, 2022, stating that "the parties executed a settlement of the substantive claims in this case but did not reach a settlement on the issue of attorney's fees." [ECF No. 20]. The parties then filed a Joint Report for Fairness Hearing. [ECF No. 21].

On February 9, 2022, the Undersigned held a Zoom videoconference fairness hearing and issued an Order approving the parties' partial settlement. [ECF Nos. 22-25].

The parties engaged in settlement discussions concerning Stern's fee award, with Fiore making an offer and Dominguez making a bracket proposal. [ECF No. 33-1, ¶¶ 83-84, 86-88]. Ultimately, the parties' discussions did not prove fruitful.

Plaintiff filed her fees motion and bill of costs. [ECF Nos. 27, 33-34]. Defendants filed a response and a notice of supplemental authority. [ECF Nos. 36-37; 44]. The Undersigned has held two hearings: one to address the parties dispute concerning the sealed and unsealed filings and another to address the substance of the parties' dispute concerning Plaintiff's fee request. [ECF Nos. 29-31; 39; 40-42]. This matter is ripe for adjudication.

## II.     Overview

As evidenced by the above recitation of events, this relatively straightforward,[5]

one-count FLSA case has spun out of control. Both sides have been waging a full-out legal

war rather than a modest skirmish. The bad blood between the litigants began before

each side retained the services of an attorney. The Undersigned notes that on April 27,

2021, well before Dominguez retained Stern, Attorney Fiore threatened Dominguez in an

email stating, among other things, that he would "file a [r]eport and [c]omplaint with law

enforcement and [Dominguez's] current employer." [ECF No. 33, p. 8].[6]

The aggression ratcheted-up with Stern sending emails accusing Attorney Fiore of

"bold face lying," calling him an "embarrassment to the profession," referring to his

---

[5]      While Fiore, on multiple occasions, *threatened* to file counterclaims, challenge FLSA
jurisdiction, and raise the administrative exemption, this case settled before an answer or
motion to dismiss was filed.

[6]      Florida Statutes § 836.05    (entitled "Threats; extortion") provides that:

Whoever, either verbally or by a written or printed communication,
maliciously threatens to accuse another of any crime or offense, or by such
communication maliciously threatens an injury to the person, property or
reputation of another, or maliciously threatens to expose another to
disgrace, or to expose any secret affecting another, or to impute any
deformity or lack of chastity to another, with intent thereby to extort money
or any pecuniary advantage whatsoever, or with intent to compel the
person so threatened, or any other person, to do any act or refrain from
doing any act against his or her will, shall be guilty of a felony of the second
degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

conduct as "disgusting," and stating that he "elected to lie and act like a further bully."
[ECF No. 36-1, pp. 6-7].

The Court finds that **both** sides are partially responsible for the excessive
attorney's fees in this case. Moreover, as will be discussed in detail below, Stern could
have been more efficient in performing certain tasks and should have refrained from
lobbing personal attacks on Attorney Fiore's character.

On the other hand, if Defendants are going to mount a full-fledged assault, then it
is unsurprising that Stern would respond in kind. *See Brown v. Lawn Enf't Agency, Inc.*,
369 F. Supp. 3d 1224, 1229 (N.D. Fla. 2019) ("A defendant 'cannot litigate tenaciously and
then be heard to complain about the time necessarily spent by the plaintiff in response.'"
(quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (en banc))).

In short, it cannot reasonably be disputed that this case was over-litigated, but the
Court will not lay all of the blame on Plaintiff's counsel because part of the blame rests
with Defendants.

### III.   Plaintiff's Non-Compliance with the Local Rules and Public Filings of Personally Identifiable Information and Settlement Terms

Defendants point out that Plaintiff failed to comply with the Local Rules in two
respects: (1) Plaintiff's fees motion is not verified in violation of Rule 7.3(a)(7), and (2) it
totals 22-pages, exceeding the page limits by two pages.[7] [ECF No. 36, p. 3].

---

[7]     The parties reached a settlement before a scheduling order was entered in this case.
Had a scheduling order been entered, it would have included the Undersigned's *standard*

"Local Rule 7.3 sets forth the requirements for filing a motion for attorney's fees, non-taxable expenses and costs." *Carnival Corp. v. McCall*, No. 18-24588-CIV, 2021 WL 2338647, at *2 (S.D. Fla. Apr. 26, 2021), report and recommendation adopted, No. 18-CV-24588, 2021 WL 2333102 (S.D. Fla. June 8, 2021). "This rule provides a mechanism to assist parties in resolving attorneys fee and costs disputes by agreement." S.D. Fla. L.R. 7.3(a).

"Compliance with Local Rule 7.3 is not optional and futility will not excuse a party from complying with its obligations." *McCall*, 2021 WL 2338647, at *4 (citing *Norych v. Admiral Ins. Co.*, No. 08-60330-CIV-ALTONAGA, 2010 WL 2557502, at *2 (S.D. Fla. June 23, 2010)).

At the same time, "it is properly within the Court's discretion to determine that the limited non-compliance [does] not warrant denial of the entire motion for attorney's fees." *Maale v. Kirchgessner*, No. 08-80131-CIV, 2011 WL 1549058, at *5 (S.D. Fla. Apr. 22, 2011); *see also Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, No. 12-22539-CIV, 2015 WL 11201164, at *2 (S.D. Fla. Jan. 14, 2015) ("Notwithstanding [the nonmovant]'s failure to follow the unequivocal requirements of Local Rule 7.3, the Undersigned will consider the tardy specific objections to particular time entries.").

Here, the Court will exercise its discretion and consider the merits of Plaintiff's fee motion. Had the Court had occasion to enter a scheduling order in this case, the parties

---

provision, which states that "any submission by any party must be double-spaced, and for every 5 pages provided for in the Local Rules the parties shall have an additional page (e.g., a 10-page motion may be 12 pages, a 20-page motion may be 24 pages)."

would have been afforded an additional four pages for a motion or response as a matter of course, under the Undersigned's standard scheduling order. Moreover, although the Local Rules do require that fees motions be verified and the instant motion (despite being titled a "Verified Motion") does not include a verification, Stern filed a 36-page declaration which includes, sometimes verbatim, much of the same information contained in the not-verified motion. For these reasons, the Undersigned will excuse Plaintiff's limited non-compliance with the Local Rules.

Next, Defendants note that Plaintiff's counsel publicly-filed Plaintiff's 321-page fees motion and exhibits included personally identifiable information (PII) and some of the terms of the settlement and settlement negotiations. [ECF No. 36, pp. 1-2]. Defendant further notes that Exhibit 12 of Plaintiff's most-recent, redacted fees motion still includes the last four digits of Plaintiff's social security number and Defendant's Tax ID number. *Id.* at 2.

Section 6(A) of the CM/ECF Administrative Procedures (entitled, "Filing Documents Containing Personal Data Identifiers") states that:

> Filers must exclude or redact personal information from documents filed with the Court as required by Federal Rule of Criminal Procedure 49.1 and Federal Rule of Civil Procedure 5.2. Unless specifically exempted by the rules or by court order, **the personal data identifiers noted below must be redacted to show only the following: Social Security number: last four digits only; taxpayer ID number: last four digits only**; financial account numbers: last four digits only; date of birth: year only; minor's name: initials only; home address: city and state only (for criminal cases only).

27

(emphasis added). Plaintiff's use of the last four digits of her social security number is therefore permissible under the CM/ECF Administrative Procedures.

The Undersigned was unable to locate the corporate defendant's Tax ID number in Exhibit 12. However, the corporate defendant's Tax ID number *is* visible in the W-2 forms filed as part of Exhibit 6.

If, in addition to the two pages in Exhibit 6, there are any other portions of Plaintiff's filing which disclose more than the last four digits of the corporate defendant's Tax ID Number, then -- within one (1) week from today -- Defendants will file a notice on CM/ECF identifying the page(s) where more than the last four digits of the corporate defendant's Tax ID number are visible. The Undersigned will then issue a Paperless Order instructing the Clerk of the Court to restrict ECF No. 33-1[8] and directing Plaintiff's counsel to re-file ECF No. 33-1, with the corporate defendant's Tax ID Number redacted.

The Undersigned will not, however, deny Plaintiff's fee request on this ground. The Undersigned dealt with Plaintiff's publicly-filed initial fees motion by issuing a Post-Hearing Administrative Order [ECF No. 31], which directed the Clerk of the Court to seal Plaintiff's initial motion (including all exhibits) and instructed the parties to confer concerning what information should be redacted from future filings. The parties have since filed redacted and unredacted (under seal) versions of their filings. Plaintiff's

---

[8]     The Clerk of the Court is unable to restrict specific pages on CM/ECF and will need to restrict the entirety of ECF No. 33-1.

continued inclusion of the corporate defendant's unredacted Tax ID Number appears to be an oversight, given Plaintiff's 323-page filing.

## IV.   Analysis

### a.   Entitlement

Typically, under the "American Rule," "each party bears its own attorney's fees." *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1331 (11th Cir. 2002) (acknowledging "the general applicability of the American Rule regarding fee shifting, i.e., that each party bears its own attorneys' fees"); *Panama Shipping Lines, Inc. v. Ciramar Int'l Trading, Ltd.*, No. 08-21213-CIV, 2009 WL 812714, at *3 (S.D. Fla. Mar. 26, 2009) ("The American Rule stands for the proposition that "'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.'" (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975))). Thus, "absent statute or enforceable contract, litigants pay their own attorneys' fees." *Alyeska Pipeline Serv. Co.*, 421 U.S. at 257.

"The FLSA . . . explicitly provides that the Court 'shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.'" *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1345–46 (S.D. Fla. 2007) (quoting 29 U.S.C. § 216(b)). "The provision for an award of fees to a prevailing plaintiff under the FLSA is not based on a finding of defendant's fault, but, rather, on the Congressional determination that such a provision was needed

to make plaintiffs whole." *Wolff v. Royal Am. Mgmt., Inc.*, No. CV-11-351-N, 2012 WL 5303665, at *3 (S.D. Ala. Oct. 25, 2012), aff'd, 545 F. App'x 791 (11th Cir. 2013).

"By allowing the recovery of attorneys' fees, the FLSA furthers the statute's goal of protecting employees' right to fair pay by encouraging lawyers to accept FLSA clients without consideration of their clients' immediate ability to pay." *Smith v. WBY, Inc.*, No. 1:16-CV-4017-MLB, 2021 WL 4224012, at *5 (N.D. Ga. Sept. 16, 2021) (citing *Grochowski v. Ajet Const. Corp.*, No. 97 CIV 6269, 2002 WL 465272, at *2 (S.D.N.Y. Mar. 27, 2002) ("The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.")).

Thus, a prevailing FLSA plaintiff is entitled to recover reasonable attorney's fees. *See P&k Rest. Enter., LLC v. Jackson*, 758 F. App'x 844, 847 (11th Cir. 2019) ("Prevailing FLSA plaintiffs are 'automatically entitled to attorneys' fees and costs.'" (quoting *Dale v. Comcast Corp.*, 498 F.3d 1216, 1223 n.12 (11th Cir. 2007) (citing 29 U.S.C. § 216(b))). "What constitutes a reasonable fee is a matter within a district court's sound discretion." *Shropshire v. Towing & Auto Repair Mgmt. Corp.*, No. 8:20-CV-1931-TPB-CPT, 2021 WL 5496178, at *2 (M.D. Fla. Oct. 25, 2021), report and recommendation adopted sub nom. *Shropshire v. Towing & Auto Repair Mgmt. Corp.*, No. 8:20-CV-1931-TPB-CPT, 2021 WL 5494504 (M.D. Fla. Nov. 23, 2021).

Dominguez is the prevailing party in this FLSA action. Here, the Court entered an Order approving the FLSA settlement and "reserve[d] jurisdiction to enforce the terms of the parties' settlement and to determine reasonable attorney's fees and costs." [ECF No. 25, p. 3]. This Order [ECF No. 25] makes Dominguez the prevailing party. *See Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1167 (S.D. Fla. 2003) ("Since the May 24, 2002 [o]rder approved the settlement and specifically reserved the right to award attorney's fees, [the] [p]laintiff [was] the prevailing party.").

**b.     Reduction or Denial of Attorney's Fees to the Prevailing Party**

As will be discussed in more detail below, notwithstanding a statutory provision providing for attorney's fees, courts in this Circuit have in some instances denied or significantly reduced attorney's fees to the prevailing plaintiff. Unsurprisingly, the parties here dispute whether this is such a case. The Court will summarize the parties' positions below.

**i.     Defendants' Position**

Fiore argues that the reasonable fee award in this case should be **nothing** or, alternatively, the fee request should be *substantially* reduced based on Plaintiff's counsel's conduct.

Fiore contends that Stern's "pattern of conduct in this case merits, at a minimum, substantial if not complete reduction of his fee claim." [ECF No. 36, p. 2]. According to Fiore, Plaintiff's counsel's objectionable conduct:

began with the failure to provide pre-suit notice, followed by poison-pen emails, all designed to churn fees and inflict maximum damage to Defendants' reputation. It is these actions, combined with the continued need to create privacy and settlement breach issues in furtherance of generating more billable hours, that together establish the special circumstances to justify an award of no fee in this case.

*Id.*

Fiore asserts that this action was settled in six weeks and that it "has been nothing more than a vessel for churning fees since inception and is a study of how FLSA attorney's fees claims can be abused." *Id.* at 2-3. Fiore refers to Stern's fee motion, which is 318-pages (including exhibits), as embodying this litigation in that it is "unreasonable, uncivil, disparaging and wholly unnecessary." *Id.* at 2.

At bottom, Defendants argue that the instant case falls within the special category of FLSA cases where the reasonable fee award is zero. *Id.* at 3.

Fiore cites eight factors in support of the position that Stern should be awarded no attorney's fees: (1) the amount Defendants' agreed to pay to settle Plaintiff's claim is a fraction of the amount originally sought; (2) Stern's failure to provide pre-suit notice or demand, "depriv[ed] Defendants of any opportunity to address the claim pre-suit and avoid a public filing which they had the financial ability and incentive to avoid"; (3) Stern's failure to engage in a reasonable, pre-suit investigation of Dominguez's claim; (4) Stern's "actions appear[ed] designed to litigate, churn the file, create needless fees and perpetuate the litigation"; (5) the amount of fees sought are lopsided compared to the settlement amount; (6) "this case fits the description of a classic nuisance settlement to

resolve a nuisance litigation"; (7) Stern's unprofessional emails; and (8) Plaintiff has twice breached the settlement agreement through unredacted and redacted public filings disclosing settlement offers and the filing of two claims, most recently on April 11, 2022. *Id.* at 9-13.

### ii.    Plaintiff's Position

Stern takes the position that "Defendants' strategic choices only served to cause attorneys' fees to be incurred which were avoidable." [ECF No. 33, p. 3 (citing Defendants' "immediate threats of filing [c]ounterclaims against Ms. Dominguez upon Defendants' first attorney's appearance in this action")]. Of course, Stern downplays his own behavior as a contributing factor to increased attorney's fees and delay in reaching a settlement in this case. *Id.* at 11 (referring to Stern's December 2, 2021 emails calling Attorney Fiore a "bully" and "an embarrassment to the profession" and referring to Fiore's conduct as "disgusting" and accusing him of "bold face lying" as "communicating bluntly" and "strongly decr[ying] Defendants' renewed bullying tactics and reprehensible conduct toward Dominguez"].

Stern takes the position that he is entitled to reasonable attorney's fees in this case for two reasons:

> the material settlement terms that Plaintiff and Defendants expressly agreed upon in January 2022 entail an **explicit agreement by Defendants to pay Plaintiff's reasonable attorneys' fees** and costs in this case[] [and] no "special circumstances" exist that could warrant denying Plaintiff's statutory recovery of her reasonable attorneys' fees and costs from Defendants.

*Id.* at 5 (emphasis added). At the same time, he acknowledges that "[Plaintiff] is aware that since approximately mid-January 2022, it has been Defendants' express position to raise as a legal argument before this Honorable Court that a 'zero fee,' or 'no attorneys fee,' should be paid by Defendants in this case." *Id.* at 5.[9]

Stern states both that Plaintiff was not required to provide pre-suit notice to Fiore and that Dominguez's written communications with Attorney Fiore in April 2021, provided notice. *Id.* at 6 ("[T]he law is clear the FLSA does not require a plaintiff's attorney to serve a pre-suit demand to an employer (regardless of whether it's a construction company or a law firm) as a condition precedent to filing an overtime [c]omplaint for an employee under the Fair Labor Standards Act." (citations omitted)); *id.* at 7 ("Dominguez did provide direct notice to Defendants—in writing—on April 9, 2021 that she had worked "endless hours unpaid" for Mr. Fiore's law firm as part of e-mail/text correspondence between Ms. Dominguez and Mr. Fiore between April 9 and 14, 2021 when Ms. Dominguez resigned from her employment with Defendants.").

Moreover, based on the April 2021 emails and text messages -- which Stern characterizes as "harassing" and "threatening" -- and Fiore's "aggressive defense position" at the start of this lawsuit, Stern expresses grave doubt as to whether a pre-suit

---

[9] The Eleventh Circuit has observed that its "own precedent has indicated that, at least in the FLSA context, there are some cases where a reasonable fee award is zero." *Batista v. S. Fla. Woman's Health Assocs., Inc.*, 844 F. App'x 146, 152 (11th Cir. 2021) (citing *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1244 (11th Cir. 2009)).

settlement of Plaintiff's claims would have been possible if Plaintiff provided notice before filing her Complaint. *Id.* at 9; *id.* at 11 ("[A]ny notion that the disputes in this litigation could've (or would've) been resolved through a letter from Plaintiff's [c]ounsel['s] law firm is preposterous."). He also states that *Lynn's Food Stores, Inc.* would have prohibited a pre-suit settlement of Dominguez's FLSA claims. *Id.* at 11.[10]

> According to Stern,
>
> Ms. Dominguez's attorneys' fees were needlessly multiplied – not because of a purported lack of "civility" by the undersigned counsel or attempt to "milk" the file (as Defendants have falsely claimed to Plaintiff's [c]ounsel), but rather because Defendants' obstructionist strategies and actions have consequences. To this end, Defendants made this case more difficult and ultimately more expensive than it had to be and neither Ms. Dominguez nor Plaintiff's [c]ounsel should have to bear the burden of the expense resulting from Defendants' exasperating decisions. To hold otherwise would not only allow—but encourage—[d]efendant employers in FLSA cases to stonewall [p]laintiffs in the hopes that an employee will back down if not give up entirely while his/her attorney works for free.

*Id.* at 12-13.

---

[10]    This argument, put charitably, is unpersuasive. *See Strange v. Aircraft Demolition, Inc.*, No. 21-CV-80766, 2021 WL 3621951, at *3 (S.D. Fla. June 24, 2021), report and recommendation adopted, No. 21-CV-80766-RAR, 2021 WL 2980205 (S.D. Fla. July 14, 2021) ("[N]o court approval is required because [the] [p]laintiffs' recovery occurred pre-suit. Court approval under *Lynn's Food Stores* is required 'in the context of suits brought directly by employees' and 'private action[s].'" (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1352).

### iii.    The Court's Inherent Power to Award No Attorney's Fees in Special Circumstances

Despite reaching a settlement of Plaintiff's claims before Defendants had to respond to the Complaint, the parties' interactions in this case (and at the conclusion of Plaintiff's employment) were contentious and needlessly resulted in a delay of the settlement (and court-intervention to resolve the fee dispute).

Before addressing Defendants' argument that a reasonable fee award in this case should be an award of no fees, the Undersigned will discuss some of the cases where Courts have decided to award no attorney's fees to a plaintiff's counsel even though the plaintiff prevailed on her claims. As can be expected in cases where a statute provides for an attorney's fee award, cases where no award is given to the prevailing plaintiff are few and limited to certain, special circumstances (discussed below).

While the FLSA expressly provides for an award of reasonable attorney's fees to a prevailing plaintiff, 29 U.S.C. § 216(b), this Court has observed that "an entitlement to attorney's fees cannot be a *carte blanche* license for [p]laintiffs to outrageously and in bad faith run up attorney fees without any threat of sanction." *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003).

In *Goss*, this Court denied a prevailing FLSA plaintiff's motion for attorney's fees. The Court observed that "the combined value of [the] [p]laintiff's claims for overtime and wage compensation [was] $315.89" for which her counsel sought almost $16,000.00 in attorney's fees. *Id.* at 1164. The *Goss* Court observed that plaintiff's counsel "seem[ed] to

have leveraged a small sum [recovery] as a stepping-stone to a disproportionately large award of attorney's fees" and "he continuously employed a strategy of delay and obfuscation in his attempt to ward off the inevitable resolution of the case." *Id.* at 1168.

The *Goss* Court, citing *Tyler v. Corner Construction Corp.*, 167 F.3d 1202, 1206 (8th Cir. 1999), noted that "[t]here [were] 'special circumstances' that [could] render such an award of attorney's fees unjust, and so-called nuisance settlements represent[ed] such a circumstance." *Id.* The *Goss* Court reasoned that:

> To ask in good faith for upwards of $16,000 in attorney's fees for prosecuting a case that [the] [p]laintiff's counsel knew would involve no more than a modest sum of $316, and to continue to engage in a pattern of behavior aimed at inflating the levels of attorney's fees shocks the conscience of the Court. It is the functional equivalent of using a sledgehammer to chip away at [the plaintiff's counsel's] affirmation of good faith. This strategy of "shaking down" [the] [d]efendants with nightmarishly expensive litigation solely in pursuit of attorney's fees must not be rewarded.

> Therefore, the Court finds that it would be unreasonable and indeed, unjust, to force [the] [d]efendants to pay any of [the] [p]laintiff's attorney's fees, since the suit was frivolous in the first instance and [the] [p]laintiff's counsel grossly exaggerated the amount of hours expended. If the award of any amount of attorney's fees in this case is not flatly unreasonable, then the Court struggles to envision a scenario of reasonability.

*Id.* at 1169 (footnote omitted).

Approximately six years later, the Eleventh Circuit affirmed a district court's use of its inherent powers to deny a fee request to a prevailing FLSA plaintiff. *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1244 (11th Cir. 2009). The plaintiff in *Sahyers* had worked as a paralegal for the defendant law firm. She did not make a written demand

for payment and her lawyer did not provide notice of the claim or attempt to collect the alleged wages owed before filing suit. *Id.* at 1242. At the hearing on plaintiff's fees motion, plaintiff's attorney told the court that the reason he had not provided pre-suit notice of the claim to defendants was that "he was only following the instructions of his client." *Id.* at 1244. The district court denied the plaintiff's request for fees and costs, noting "that there are some cases in which a reasonable fee is no fee and [finding] that this case was such a case." *Id.* (internal quotation marks omitted).

On appeal, the Eleventh Circuit affirmed the lower court, finding no abuse of discretion. The appellate court noted that "[t]he district court, in substance, based [its decision not to award attorney's fees] on its inherent powers to supervise the conduct of the lawyers who come before it and to keep in proper condition the legal community of which the courts are a leading part." *Id.*

The Eleventh Circuit noted that the district court acted within the scope of its inherent powers when it denied the plaintiff's fee request:

> The district court's inherent powers support its decision here. [The] [d]efendants are lawyers and their law firm. And the lawyer for [the] [p]laintiff made absolutely no effort—no phone call; no email; no letter—to inform them of [the] [p]laintiff's impending claim much less to resolve this dispute before filing suit. [The] [p]laintiff's lawyer slavishly followed his client's instructions and—without a word to [the] [d]efendants in advance—just sued his fellow lawyers. As the district court saw it, this conscious disregard for lawyer-to-lawyer collegiality and civility caused (among other things) the judiciary to waste significant time and resources on unnecessary litigation and stood in stark contrast to the behavior expected of an officer of the court. The district court refused to reward— and thereby to encourage—uncivil conduct by awarding [the] [p]laintiff

attorney's fees or costs. Given the district court's power of oversight for the bar, we cannot say that this decision was outside of the bounds of the district court's discretion.

*Id.* at 1245–46 (footnotes omitted).

At the same time, the Eleventh Circuit warned against reading too much into this decision:

> **We strongly caution against inferring too much from our decision today. These kinds of decisions are fact-intensive. We put aside cases in which lawyers are not parties. We do not say that pre-suit notice is usually required or even often required under the FLSA to receive an award of attorney's fees or costs**. Nor do we now recommend that courts use their inherent powers to deny prevailing parties attorney's fees or costs. **We declare no judicial duty. We create no presumptions.** We conclude only that the district court did not abuse its discretion in declining to award some attorney's fees and costs based on the facts of this case.

*Id.* at 1246 (emphasis added).

In *Olguin v. Florida's Ultimate Heavy Hauling*, the Undersigned recommended to the District Court that the plaintiff be denied both attorney's fees and costs and that plaintiff's counsel be required to pay some (but not all) of the defendants' attorney's fees under 28 U.S.C. § 1927. No. 17-61756-CIV, 2019 WL 3426539, at *2 (S.D. Fla. June 5, 2019), report and recommendation adopted, No. 17-61756-CIV, 2019 WL 5290856 (S.D. Fla. July 23, 2019).

At the outset, the Undersigned observed in *Olguin* that the "lawsuit (which quickly morphed from an extremely small claim worthy of a telephone call into a full-fledged litigation war) should never have been a lawsuit in the first place" and "once filed. . .

should have been quickly and inexpensively resolved," but wasn't. *Id.* at *1. The Undersigned observed that:

> what should have been, at *most*, a modest, manageable, garden-variety squabble under the Fair Labor Standards Act involving a claim of less than $1,000 and a settlement of $783 (and which likely could have been resolved with a single telephone call or email, without the filing of a lawsuit) mushroomed into a full-scale, pedal-to-the-metal litigation war and an epic battle over attorney's fees.

*Id.* (emphasis in original).

The plaintiff's complaint in *Olguin* alleged both overtime and minimum wage claims. *Id.* at *3. But the plaintiff later unconditionally abandoned his overtime claim after the defendants filed their motion for summary judgment based on the Federal Motor Carrier Safety Act ("FMCSA") exemption. *Id.* at *5. The $783.00 settlement consisted of $391.50 for the unpaid minimum wage claim and $391.50 in liquidated damages. *Id.* at *3.

The record demonstrated that:

[the] [p]laintiff's counsel (1) did not determine before trial that a statutory exemption applied, (2) did not ask [the] [d]efendants about the applicability of the exemption before filing suit, (3) did not make a pre-filing demand, (4) continued to litigate after receiving evidence establishing the exemption, (5) declined to accept [the] [d]efendants' tender of wages made less than two months after the lawsuit was filed (by claiming that a receptionist at his law firm was not authorized to accept an envelope containing the tender), and (6) later demanded a general release as a condition for settlement even though [the] [d]efendants and their insurer ha[d] claims against [the] [p]laintiff for property damage.

*Id.* at *2.[11] The Undersigned also determined that the plaintiff's counsel "appeared to be far-more interested in generating attorney's fees for himself than in resolving a modest claim for his client's benefit" and "[h]is actions strongly suggest[ed] a strategy of avoiding an early resolution in order to generate more fees." *Id.* Based on the "unique facts" of the case, the Undersigned determined that no fee was a reasonable fee award, an award of costs would be unjust, and that plaintiff's counsel would be required to pay some of the defendants' attorney's fees under 28 U.S.C. § 1927. *Id.*

The Undersigned identified nine factors in *Olguin* which supported special circumstances warranting an award of no fees: (1) the "statement of claim was for $11,235 (including liquidated damages) and [the plaintiff] settled for $783"; (2) "the claim largely involved an administrative scenario generated by the simple fact that Plaintiff ended his employment in the middle of the week"; (3) the plaintiff and his attorney failed to contact defendants to attempt to resolve the claims before filing suit; (4) the plaintiff's counsel did not investigate the applicability of the FMCSA exemption by contacting the plaintiff's former employers; (5) the plaintiff's counsel's refusal to accept the defendants' tender could only be explained by plaintiff's counsel's focus on his own attorney's fees; (6) the

---

[11]     The case also involved a motion by defendants to prohibit the plaintiff's counsel from soliciting current and former employees in violation of Florida Bar Rule 4-7.18(a)(1) and an evidentiary hearing on whether the plaintiff's counsel had in fact solicited a former employee. *Olguin*, 2019 WL 5290856, at *6-9. But the plaintiff filed a notice of settlement and the District Court's administrative order closing the case automatically terminated all pending motions, so no judicial findings of fact were made concerning that issue. *Id.* at *11.

plaintiff's counsel's conduct "seem designed to perpetuate the litigation"; (7) the amount in controversy/the final settlement amount was disproportionate to the amount of fees sought by the plaintiff's counsel; (8) the plaintiff's counsel "unreasonably insisted on a release from Defendants even though he knew they still had a claim against [the plaintiff] for damages to the truck"; and (9) other courts had "castigated" the plaintiff's counsel for similar conduct such that "his tenacious, difficult, and uncooperative attitude . . . [was] hardly an anomaly." *Id.* at *14.

Other courts have acknowledged the court's inherent authority to award no fees, but have determined that the circumstances in those cases did not warrant an award of no fees. In *Cil v. DJT Miami Corp.*, "the Undersigned acknowledge[d] the discretion to refuse or reduce an attorney's fees award in certain special circumstances, but . . . [did] not find that the circumstances . . . [were] special enough to justify an outright denial of fees and costs." No. 17-20936-CIV, 2018 WL 11348823, at *8 (S.D. Fla. Dec. 21, 2018). Instead, the Undersigned found the facts "sufficient to warrant a significant reduction on a percentage basis." *Id.*

In *Cil*, the defendants primarily argued "that the comparatively modest results obtained" – "[the] [p]laintiffs recovered approximately only 16% of the total amounts requested" -- "require[d] a significant reduction in the fees award or no fees award at all." *Id.* at *2. The defendants also argued that the plaintiffs' counsel's decision to file

separate lawsuits instead of bringing one lawsuit "alone should result in a significant reduction in fees." *Id.* at *6.

Ultimately, the Undersigned applied a 40 percent reduction to plaintiff's fees based on the modest result achieved, the confusing nature of the billing records (the time entries listed legal services provided to multiple plaintiffs and some were impossible to segregate), and counsel's use of block billing. *Id.* at *9.

In *Johnson v. S. Fla. Paving Grp., LLC*, the defendants also "argue[d] that the 'special circumstances' of this case ma[d]e a 'reasonable fee' award zero" or, alternatively, that the plaintiff's counsel's fee award be reduced from the requested $10,320.00 to $2,000.00, reflecting fees incurred through the date the defendants made a settlement offer. 2020 WL 5113592, at *2. In rejecting the defendants' contention that this was a "special circumstances" case, the *Johnson* Court made several observations.

It noted that the FLSA did not require a pre-suit demand. *Id.* at *2-3. It observed that in the cases cited by the defendants where the district court had awarded no fees, the defendants had made multiple offers to settle the FLSA claims and those defendants had tendered or tried to tender payment for the claimed wages, whereas the *Johnson* defendants made no settlement offers before the mediation and never attempted to tender payment. *Id.* at *3-4. The Court also found that "the record reflect[ed] that [the] [p]laintiff and [the] [d]efendants engaged in several settlement discussions, none of which succeeded because [the] [d]efendant was unwilling to settle for anything less than

a 'voluntary dismissal' of the case." *Id.* at *4. The Court also found no reason to conclude that [the] [p]laintiff failed to engage in good faith negotiations or demanded five-figure fees from the commencement of the litigation." *Id.*

Although the *Johnson* Court found that special circumstances justifying an award of zero attorney's fees were not present in that case, it nonetheless applied a 35% reduction to the fees sought by plaintiff's counsel to "address[] the lack of proportionality between the amount involved/results obtained to the legal fees incurred." *Id.* at *7.

More recently, in *Caplan v. All Am. Auto Collision, Inc.*, 36 F.4th 1083 (11th Cir. 2022), the Eleventh Circuit found no abuse of discretion in this Court's across-the-board 75 percent reduction of attorney's fees in an action brought under the Americans with Disabilities Act of 1990 ("ADA").[12]

The District Court in *Caplan* determined that the plaintiff was the prevailing party under the ADA. *Id.* at 1087. Nonetheless, it found that "the requested [fee] amount was grossly disproportionate given the case's circumstances" and reduced the amount requested from $38,014.50 for attorney's fees (including paralegal fees) to $7,500.00 ($8,579.80 inclusive of expenses and fees). *Id.* 1087, 1089.

The District Court based its decision on the following factors: (1) the requested fees were "grossly disproportionate" with the case, which was a routine ADA tester action,

---

[12]     Fiore filed a notice of supplemental authority citing *Caplan*. [ECF No. 44]. As indicated in the notice, *Caplan* involved a *different* attorney with the last name Stern.

one of hundreds of cases filed by the plaintiff's attorney in the Southern District of Florida; (2) the plaintiff's attorney's conduct, which included the filing of a "wholly unnecessary" sanctions motion and "pleadings filled with hyperbolic and accusatory language" and "caused [the litigation] to become needlessly protracted and contentious" and (3) while the defendants claimed they were not aware of the ADA violations, they indicated a willingness to correct the violations early in the litigation. *Id.* at 1088 (internal quotation marks omitted).

The District Court also stated that given the attorney's handling of at least 140 other ADA actions during the litigation, "it was inconceivable that [he] spent 88 hours on this case." *Id.* (internal quotation marks omitted). Finally, the District Court cited numerous instances of excessive billing for "boilerplate" filings, unnecessary motions, excessive time spent on certain motions or tasks, and administrative tasks performed by the attorney which should not have been included or should have been billed by the paralegal.

### iv.    The Circumstances of This Case

The Undersigned finds that the instant case does not merit a zero fee award. The Eleventh Circuit summarized a common fact pattern in FLSA cases involving special circumstances:

> **an employee leaves her job—often abruptly—with a small amount of money owed for unpaid wages. Instead of thereafter contacting her employer to alert the latter that she has not yet received payment of any unpaid wages, the employee hires a lawyer. Then, instead of contacting**

> **the employer to quickly resolve the matter—or directing the former employee to first do so—the attorney files an FLSA federal lawsuit**: a lawsuit whose $400 filing fee, alone, will often exceed the money owed to the employee. Once aware of litigation, the employer then immediately tries to rectify the situation by getting to the employee her last check. But instead of a speedy resolution, the litigation drags on because the employee's attorney insists on attorney's fees in an excessive amount that the employer rejects. The employer's rejection results in continuing emails and communications back and forth, meaning that as long as plaintiff's counsel can keep this give-and-take going, his attorney's fees continue to rise, which then further discourages a settlement. And so it goes.

*Batista v. S. Fla. Woman's Health Assocs., Inc.*, 844 F. App'x 146, 153 (11th Cir. 2021) (*per curiam*) (emphasis added).[13] The Eleventh Circuit also noted that "not all district court cases with analogous facts have resulted in a decision to award no attorney's fees to the FLSA plaintiff's attorney." *Id.* at 156 (citing *Johnson*, 2020 WL 5113592 and *Munoz v. Kobi Karp Arch. & Interior*, No. 09-21273, 2010 WL 2243795 (S.D. Fla. May 13, 2010)).

This is not a case like *Olguin*, where the plaintiff's "claim largely involved an administrative scenario generated by the simple fact that [the] [p]laintiff ended his employment in the middle of the week." 2019 WL 5290856, at *14; *see also Batista*, 844 F. App'x at 153 (describing the situation where "an employee leaves her job—often abruptly—with a small amount of money owed for unpaid wages"); *Goss*, 248 F. Supp.

---

[13]    In *Batista*, the Eleventh Circuit determined that the lower court had abused its discretion when it based its decision to award no fees on a factual finding which was not grounded on the evidentiary record. 844 F. App'x at 160. Specifically, the lower court found that the defendants had mailed a final paycheck to the plaintiff before plaintiff initiated her FLSA action, but the "[d]efendants never supported their factual position with an affidavit[.]" *Id.* at 159.

2d at 1164 (S.D. Fla. 2003) ("After [the plaintiff] was terminated, [her employer] made available a payroll check for $137.03 dated January 31, 2002 owed for January 13 and 14, the final two days of her employment. Due to the normal payroll cycle, those two days had not been compensated yet.").

Rather, Plaintiff's claims against Defendants span over several years and were not the product of a simple disruption to the payroll process caused by a mid-week cessation of employment. [ECF Nos. 1; 14]. Nor can the Undersigned say that the amount of Plaintiff's claimed damages was a nuisance value. *See Batista*, 844 F. App'x at 153 (observing that in these types of cases the "$400 filing fee, alone, will often exceed the money owed to the employee").

The instant case is also a far cry from *Goss*, where the "[d]efendants' counsel repeatedly contacted [the] [p]laintiff's counsel during the ensuing weeks in order to ascertain the amount of the claim so that [the] [d]efendants might resolve the dispute without incurring any more attorney's fees" but "received no response to these follow-up calls." 248 F. Supp. 2d at 1165. To his credit, Stern always responded promptly to communications from Fiore's counsel, provided his cell phone number so that he could be reached after hours, made himself available to opposing counsel on holidays, nights, and weekends, was transparent about the amount of attorney's fees he was seeking, provided Defendants with updated fee calculations and submitted his billing records to opposing counsel for review.

And, while this is an FLSA case filed against a lawyer and a law firm defendant with no pre-suit notice, the Undersigned will also take into account the pre-filing history between the parties.

Dominguez and Attorney Fiore had a working relationship spanning more than six years. The parties have presented the Court with email exchanges between Fiore and Dominguez which reflect a degree of cordiality (e.g., expressing appreciation, exchanging holiday greetings, etc.). Based on some of the pre-April 2021 emails filed by the parties, it appears that this relationship was amicable until shortly before Dominguez's departure.

In April 2021, the parties' relationship imploded. Dominguez decided to leave her employment, based on what she perceived as Fiore's unfair treatment and failure to compensate her for all of her work. Fiore suspected Dominguez of furtively working for a government employer while still employed by his law firm. He accused her of committing serious computer-based crimes and stated he would be seeking civil and criminal legal recourse to protect himself and his clients and would be reporting her actions to her alleged new employer. Dominguez attached copies of text messages and emails between the parties, evidencing their heated communications during this time period.

Ultimately, Fiore did not pursue civil or criminal remedies against Plaintiff. However, in October 2021, Dominguez hired Stern to bring an FLSA lawsuit against Fiore and his law firm. [ECF No. 33-1, pp. 40-42].

Rather than reach out to Fiore, a fellow attorney, and attempt to resolve Dominguez's claims informally and without the need to create a public record, Stern *chose* to file this lawsuit with no pre-suit notice.

Stern explained that the reason he did not provide pre-suit notice to Fiore was because "[Dominguez] and Fiore had such extensive direct communication[s] months [before] that ultimately [were] unproductive." *Id.* at 55.

It may have been the case that Fiore and Dominguez exchanged numerous heated phone calls, emails, and text messages in April 2021. But approximately seven months transpired between April 2021 and the November 18, 2021 filing of Dominguez's FLSA Complaint [ECF No. 1]. Tempers may have cooled in those intervening seven months such that Fiore might have been receptive to a quick, pre-suit resolution had Stern reached out to him. It is not outside the realm of possibility that Fiore -- although he has steadfastly maintained in this litigation that Plaintiff was not owed any money -- could have decided it was more important to him to quietly settle Plaintiff's disputed claims than to have a federal lawsuit against him and his firm in the public record.

Such a simple overture on Stern's part would have been low stakes[14] and could have yielded high results, saving Fiore the time and expense of hiring his own legal counsel and avoiding the public record of a lawsuit, saving Stern the lion's share of his 59.80 hours of attorney time, and conserving the Court's limited resources.

Or perhaps, as Stern insists, it would have been an exercise in futility. We will never know for certain, because Stern *chose* not to extend the courtesy of even a brief phone call to Fiore before filing suit.

Of course, Fiore ratcheted up the hostility between the parties by threatening to file a counterclaim. *See* at 62 (A letter from Fiore's first counsel dated December 2, 2021 warned that "[t]his case [was] about to heat up significantly."). Stern made a bad situation worse by engaging in personal attacks on Fiore's character.

At times, Stern and Fiore's behavior fell below the standards of civility expected in this District, and the Court will not turn a blind eye to it. To be sure, Stern's conduct in the instant case has been troubling. Stern's emails, where he disparaged Fiore and called him, among other things, a "bully" and accused him of "bold face lying," are particularly troubling.

---

[14]     Unlike some FLSA lawsuits filed against fly-by-night businesses, there was *little to no* risk that Fiore, a well-known lawyer and prominent member of the legal community, would have avoided service or closed up shop in an effort to evade an FLSA lawsuit.

At the same time, Fiore contributed to the continued accumulation of Stern's attorney's fees by reversing course in January 2022 and taking the position that Plaintiff's counsel was entitled to *no* fees.

As Plaintiff notes in her motion,

Defendants subsequently pivoted to a "no fee"/"zero fee" defense in mid-January 2022 through Defendants' second attorney [and it] has not only resulted in a substantial number of additional hours having to be expended by Plaintiff's [c]ounsel but also injected into this case a complex legal issue with potentially far-reaching ramifications for FLSA-plaintiffs.

[ECF No. 33, pp. 14-15].

It therefore appears, on the record before the Court, as though *both* sides bear some responsibility for the continued accumulation of attorney time in this case.

It is evident that the parties will never see eye to eye in this case. While Defendants refer to Dominguez's recovery as "a nuisance settlement of the nuisance litigation that was filed," Dominguez maintains that she "obtained substantial monetary recovery," in addition to other non-monetary gains. [ECF Nos. 33, p. 3; 36, p. 5]. The truth, as it often does, lies somewhere in between. As noted by the Court in its Order following the fairness hearing, "the settlement here represents a genuine compromise of a bona fide dispute" and the "parties have agreed to settle as a result of reasonable strategic and financial considerations." [ECF No. 25, p. 2].

At bottom, the Court finds that Stern and Fiore both bear some responsibility for the protracted fee dispute which should have been resolved at a fairness hearing instead

of requiring two hearings and detailed briefing from the parties with hundreds of pages of exhibits. In sum, the special circumstances which would warrant an award of "no fees" are not present here, but *significant* reductions to Plaintiff's counsel's fees are still merited.

Having determined that the instant case does not warrant an award of no attorney's fees, the Undersigned will now determine a reasonable fee amount.

### c.    Attorney's Fees

Plaintiff seeks an award of $28,405.00 (59.80 hours times $475.00 per hour). [ECF Nos. 33, p. 17; 33-1, pp. 45-52]. As already indicated in this Order, the Court will be making significant reductions to Plaintiff's fee award.

### i.    Hourly Rate

The Supreme Court has held that a reasonable hourly rate is to be measured by prevailing market rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886 (1984). In determining the prevailing market rate, the court should consider several factors, including "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974)).

Plaintiff's counsel seeks an hourly rate of 475.00 for the work performed in this case. In support of this hourly rate (and his fee request in general), Stern has submitted the declaration of Richard D. Tuschman, Esq., an employment law attorney. [ECF No. 33-2]. Tuschman attest that he has "litigated several cases against [Stern] over the years" and believes "Stern to be an employment attorney of the highest caliber." *Id.* at ¶ 3. Based on Tuschman's experience, "rates typically range from $350.00 per hour to $550.00 per hour" in this District "for attorneys of [Stern]'s caliber." *Id.* at ¶ 4. Tuschman also opines that Stern's "time entries . . . are reasonable" and "[i]t appears to [him] that [Stern] handled this case quite efficiently while working to produce a significant outcome for Plaintiff, Evelyn Dominguez, under the parties' Settlement Agreement." *Id.* at ¶ 5.

Fiore states, in a footnote, that because Tuschman's "[d]eclaration fails to specifically identify the documents he reviewed other than the time records and court docket" his "opinion lacks adequate foundation and should otherwise be given no weight." [ECF No. 36, p. 18 n.14]. "[A]ddressing legal arguments in footnotes is an incorrect method to present substantive arguments on the merits or otherwise request relief from the Court." *Sony Music Ent. v. Vital Pharms., Inc.*, No. 21-22825-CIV, 2022 WL 4771858, at *13 (S.D. Fla. Sept. 14, 2022). For this reason, the Court could disregard Fiore's argument. Nonetheless, the Undersigned finds Tuschman's five-paragraph declaration to be conclusory and not helpful.

In any event, the Court is itself an expert on fees and "may rely on its own experience in determining reasonableness of fees." *Ayala v. Miami Cuban Link Jewelry, Inc.*, No. 22-CV-21738, 2022 WL 4598660, at *3 (S.D. Fla. Sept. 30, 2022) (quoting *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) ("The court, either trial or appellate, is itself an expert on the question [of reasonable hourly rates and hours expended] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.")).

Fiore maintains that "to the extent this Court awards any fee in this case, . . . a reasonable hourly rate should be no more than $375." [ECF No. 36, p. 16]. Fiore notes that Stern is not a board-certified trial attorney. Defendant's counsel, who is a board-certified trial attorney, is charging Fiore less than the proposed $375.00 amount. *Id.* Fiore also notes that the Undersigned has previously awarded Stern a fee award which included an hourly rate of $375.00. *Id.* at 15 (citing *Santana v. N. Beach Tavern LLC*, No. 19-23687, 2020 WL 9549658, at *1 (S.D. Fla. Jan. 17, 2020), report and recommendation adopted, No. 19-23687-CIV, 2020 WL 9549508 (S.D. Fla. June 15, 2020)).

Stern is the only timekeeper in Plaintiff's billing records. He was admitted to the Florida Bar in 2000, holds an AV rating from Martindale-Hubbell, and is a member of the Florida Chapter of the National Employment Lawyers Association. [ECF No. 33-1, ¶ 8]. For more than 21 years, Stern's practice has focused solely on labor and employment law.

*Id.* at ¶ 9. He states that he has "filed a total of approximately 1,490 cases in federal courts throughout Florida between September 2000 and March 2022" and that "approximately 1,397 cases have been Fair Labor Standards Act cases, or cases in which an FLSA claim was pled." *Id.* at ¶ 13.

Stern also cites numerous cases where state and federal courts in Florida (and elsewhere) have approved FLSA settlements where Stern's billing records reflect an hourly rate of $400.00 to $475.00. *Id.* at ¶ 7. However, as one court observed, "uncontested orders awarding fees . . . are hardly convincing evidence of a reasonable market rate" and "consequently, . . . they should be given relatively little weight." *Lewis v. Fla. Default L. Grp., P.L.*, No. 8:10-CV-611-T-30AEP, 2012 WL 252837, at *2 (M.D. Fla. Jan. 26, 2012).

Moreover, it is the Undersigned's experience that plaintiff's attorneys often agree to cut some of their hours in FLSA cases in order to reach a settlement. For this reason, the hourly rate reflected in counsel's billing records may not be the *true* hourly rate approved by the court conducting a fairness hearing.

*Santana* illustrates this point. 2020 WL 9549658, at *1. In *Santana*, the Undersigned noted that Stern had agreed to reduce his "total fees from $8,550 to $6,380" and for this reason "the Undersigned [found] that [Stern]'s fees [were] reasonable in light of . . . [the] agreement to accept less than the fee total in order to reach a settlement." *Id.*

The Undersigned observed in *Santana* that Stern "charged $450 per hour in this FLSA case" but "[i]f [Stern] had charged $375 per hour (which [was] more in line with

what other attorneys charge in similar FLSA matters), then counsel's claimed attorney's fees would be $7,162.50," $782.50 more than the negotiated fees amount of $6,380.00. *Id.* at *1, n.1. Thus, although Stern's billing records showed an hourly rate of $450.00, the negotiated fee award approved by the Court reflected an hourly rate that was approximately $334.03 per hour ($6,380.00 divided by 19.10 hours).

Based upon a review of the record, consideration of other fee requests and awards in FLSA cases, and the Court's own knowledge regarding reasonable hourly rates in this market, the Undersigned finds an hourly rate of $475.00 to be excessive. *See Jackson v. Waste Pro of Fla., Inc.*, No. 22-CV-60330, 2022 WL 4631096, at *4 (S.D. Fla. Sept. 13, 2022), report and recommendation adopted, No. 22-CV-60330-RAR, 2022 WL 4598677 (S.D. Fla. Sept. 30, 2022) (observing that while "a small handful of cases . . . have awarded rates up to $450 in FLSA cases in this district[,] . . . [a] rate above $400 seems to be the exception rather than the rule").

Instead, the Undersigned finds that an hourly rate of $400.00 is reasonable for the work performed by Stern in this case. *See Ranieri v. Premier Fire Alarms & Integration Sys., Inc.*, No. 19-CV-60229, 2022 WL 3044769, at *4 (S.D. Fla. July 15, 2022), report and recommendation adopted, No. 0:19-CV-60229, 2022 WL 3042249 (S.D. Fla. Aug. 2, 2022) (finding "$400 [was] a reasonable hourly rate for [the] [p]laintiff's attorneys" in FLSA cases and that "[a] greater rate in this matter would be unreasonable"); *Allen v. Robert F. DeLuca, M.D., P.A.*, No. 9:18-CV-81265, 2019 WL 12265795, at *2 (S.D. Fla. Oct. 29, 2019),

report and recommendation adopted, No. 18-81265-CIV, 2020 WL 9458729 (S.D. Fla. Jan. 2, 2020) (reducing requested hourly rate of $420.00 to $350.00 for attorney with over 40 years of experience in "routine FLSA case that proceeded to a short, three-hour bench trial").

### ii.   Reasonable Hours

After determining the reasonable hourly rate, courts must then determine the number of hours reasonably expended on the litigation. In submitting a fee petition, counsel must exercise proper billing judgment and thus exclude any hours that are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Cil*, 2018 WL 11348823, at *6 ("[I]f the fee applicant does not exercise the required 'billing judgment,' then the district court is **obligated** to reduce the number of hours and 'prun[e] out those that are excessive, redundant or otherwise unnecessary.'" (quoting *A.C.L.U. v. Barnes*, 168 F.3d 428 (11th Cir. 1999) (emphasis in original))).

If a court determines that the number of hours is unreasonably high, then "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at 436–37; *see also Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) (approving across-the-board percentage cut to either the total number of hours claimed or to the lodestar amount).

Plaintiff's counsel seeks to recover 59.80 hours[15] of attorney time. [ECF Nos. 33, p. 17; 33-1, pp. 45-52]. As noted above, Fiore argues that no fees should be awarded, but if the Court, in its discretion, decides to award *some* fees, then the Court should make significant reductions to Stern's fee request to account for "time entries that are either excessive or redundant, are clerical in nature or are based on unrecoverable tasks." [ECF No. 36, p. 16]. Fiore cites the following examples:

> all the many claimed hours spent negotiating settlement terms that were breached; 4.4 hours for case evaluation when Plaintiff's counsel's website advertises a "Free Employment Law Case Evaluation;" .5 hours related to sending the unprofessional December 2 emails; .5 hours researching undersigned counsel; 12.6 hours on the fee submission; numerous entries for inefficient and unnecessary work; and all time after the close of 2021.

*Id.* at 16-17.

Fiore states that "a substantial across-the-board cut is the most appropriate way to judicially resolve this claim if the court awards a fee" and cites numerous cases in this District (or affirmed by the Eleventh Circuit) where courts have applied a 75 percent reduction or greater to counsel's fees. *Id.* at 17.

The Court agrees that a substantial reduction to Plaintiff's counsel's fees is warranted. As noted above, "[w]here excessive time has been billed, rather than make line-by-line reductions, a court 'may engage in "an across-the-board cut" so long as it

---

[15]   This amount does not include 4.80 hours which Stern voluntarily excluded from the fee request submitted to the Court. [ECF No. 33-1, p. 52]. Nonetheless and for the reasons discussed in this Order, additional reductions to Stern's time are necessary.

provides adequate explanation for the decrease.'" *Flava Works, Inc. v. A4A Reseau, Inc.*, No. 14-23208-CIV, 2015 WL 11233073, at *2 (S.D. Fla. Apr. 7, 2015) (quoting *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008)); *see also Katz v. Chevaldina*, 127 F. Supp. 3d 1285, 1305 (S.D. Fla. 2015) ("[W]hen the number of hours involved is very high, the Court can conclude that an hour-by-hour analysis is impractical.").

Here, Stern has generated approximately 246 billing entries totaling 59.80 hours, spanning from October 12, 2021 through March 27, 2022. [ECF No. 33-1, pp. 45-52]. Courts have applied an across-the-board percentage reduction (as opposed to an hour-by-hour analysis) in cases involving similarly voluminous billing records. *See, e.g., Grubbs v. A-1 Gutters & More, LLC*, No. 17-14304-CIV, 2018 WL 4410914, at *3 (S.D. Fla. June 29, 2018) (applying an across-the-board percentage reduction to 47.48 hours of attorney time); *Simmons v. Twin 918 Inc.*, No. 19-CV-23737, 2019 WL 7283218, at *4 (S.D. Fla. Dec. 27, 2019) (applying an across-the-board percentage reduction, rather than engaging in an hour-by-hour analysis, where billing entries totaled 45.66 hours); *Affonso v. Se. Fla. Transportation Grp.*, LLC, No. 14-CV-81309, 2017 WL 8794779, at *3 (S.D. Fla. Nov. 30, 2017), report and recommendation adopted, No. 14-81309-CIV, 2018 WL 1795453 (S.D. Fla. Feb. 7, 2018) (applying an across-the-board reduction in case involving a total of 35.89 hours of attorney time).

Having carefully reviewed Stern's billing records and taking into account the unique history of this case, the Court will apply an across-the-board **50 percent reduction**

to Stern's 59.80 requested hours. This significant reduction to Stern's requested hours is supported by multiple factors.

First, almost 60 hours is an *exorbitant* amount of time to expend on a one-count FLSA case where the parties resolved Plaintiff's claims approximately two-and-a-half months after the Complaint was filed, no motions to dismiss or summary judgment motions were filed, no depositions were taken, no discovery hearings were held, and Defendants did not file an answer to the Complaint (although they did threaten counterclaims).

Stern is a seasoned attorney with more than 21 years of legal experience, which includes approximately 1,397 FLSA cases. [ECF No. 33-1, ¶¶ 9, 13]. The Court expects that an attorney with Stern's concentrated background in labor law in general and FLSA cases in particular would not have needed to expend almost 60 hours in this type of case. As the Eleventh Circuit has noted, "expertise and experience in a legal area 'comes [with] knowledge, efficiency, and self-confidence, which should reduce the number of hours necessary' for the tasks involved in a case." *Caplan*, 36 F.4th at 1091 (quoting *Glassroth v. Moore*, 347 F.3d 916, 919-20 (11th Cir. 2003)).

Second, the parties' needless animosity (for which Stern is partly to blame) directly resulted in unnecessary attorney hours. *See Sahyers*, 560 F.3d at 1245 ("As the district court saw it, this conscious disregard for lawyer-to-lawyer collegiality and civility caused

(among other things) the judiciary to waste significant time and resources on unnecessary litigation and stood in stark contrast to the behavior expected of an officer of the court.").

Here, Stern's antagonizing words and personal attacks on Fiore directly generated additional attorney time which would not have been incurred had Stern taken an even-keeled approach. Accusing an experienced, well-known attorney of being a liar and a bully and an embarrassment to the legal profession is bound to generate ill will. Moreover, his conscious decision to not extend the professional courtesy of a pre-filing phone call to Fiore set the regrettable, uncivil tone of this case. Stern's hostile approach to this litigation was a disservice to his client and directly resulted in increased attorney hours.

Third, Stern's billing records reveal numerous examples of unnecessary or excessive time billed on certain tasks. For example, Stern spent 1.50 hours for drafting and revising the 10-page, one-count Complaint [ECF No. 1]. Stern also spent an hour drafting and revising Plaintiff's 4-page statement of claim. [ECF No. 8]. The hours sought for both these tasks are excessive, especially given Stern's experience of having drafted or responded to thousands of similar FLSA complaints and statements of claim.

Stern also spent 10.30 hours drafting, revising, or conducting research for the verified motion for attorney's fees and an *additional* 3.90 hours drafting and revising his 88-paragraph declaration in support of that motion. While Stern's fee submissions were

61

detailed and lengthy and supported by 301 pages of exhibits, the total amount of time billed for this filing (14.20 hours) is excessive and must be reduced.

The Court also finds that Stern's practice of sometimes (but not always) creating multiple, separate billing entries for exchanging emails, telephone calls, or text messages on the same day with the same person resulted in excessive time billed. For example, on December 3, 2021, Stern billed 0.20 hours four times for exchanging emails with his client concerning different topics, for a total of 0.80 hours. In other words, Stern billed 48 minutes just for exchanging emails with his client, Dominguez. [ECF No. 33-1, p. 37]. This amount is in addition to a 30-minute phone call Stern had with Dominguez the same day.

This practice may be inequitable for yet another reason. A basic hypothetical explains why. Assume that an attorney has an 8-minute telephone call with his client and bills .2 hours, has a 7-minute call later in the day and bills another .2 hours and has a third call lasting 8 minutes and bills .2 hours again. Although that attorney spent 23 minutes on the telephone, he billed .6 hours – more than half an hour (even though the actual time was 23 percent less than half an hour).

Another example of this billing practice occurred on December 23, 2021, when Stern billed three separate time entries (totaling 0.40 hours) for exchanging emails with opposing counsel. *Id.* at 47. Copies of the December 23, 2021 email exchanges are attached to Stern's filing. *Id.* at 175-83. These emails are, at most, one paragraph, and some are only one sentence. In any event, 0.40 hours is excessive for these brief email exchanges.

Similarly on January 15, 2022, Stern lists three separate time entries totaling 0.50 hours for exchanging emails with opposing counsel. *Id.* at 48. There are six emails dated January 15, 2022 attached to Stern's filing. *Id.* at 251-53. One of these emails is two paragraphs long, the remaining emails are one or two sentences. *Id.* Billing a total of half an hour for these email exchanges does not reflect good billing judgment.

In *Alexandre v. Millenia Hous. Mgmt., Ltd.*, the Court observed that a fee petition where there were "over fifty entries where the timekeeper billed 0.1 hour to 'receive and review' correspondence from their client and defense counsel, 'receive and review' paperless orders, and 'receive and review' single page orders" was excessive and "reduce[d] these hours by two-thirds." No. 19-80612-CIV, 2020 WL 9458895, at *5 (S.D. Fla. Mar. 4, 2020), report and recommendation adopted, No. 19-80612-CIV, 2020 WL 9458738 (S.D. Fla. Mar. 23, 2020). Similarly, here, Stern's practice of billing multiple times on the same day for exchanging communications with the same person resulted in excessive time being billed.

For the reasons discussed above, the Court will **grant in part and deny in part** Plaintiff's request for attorney's fees and award her **$11,960.00** (29.9 hours -- half the claimed amount -- times $400.00 per hour), $16,445.00 less than the requested amount.

### d.    Costs

Plaintiff seeks taxable costs in the amount of $402.00 for the filing fee.[16] The payment of this filing fee is reflected on the Court's CM/ECF docket. [ECF No. 1]. Stern also attached a copy of the receipt from the Clerk's Office to the Bill of Costs [ECF No. 26, p. 2].

Absent a federal statute, civil procedure rule, or order to the contrary, a prevailing party is entitled to an award of its costs. Fed. R. Civ. P. 54(d)(1). The prevailing party must file a bill of costs, adhering to the guidelines outlined in Local Rule 7.3(c), which specifically references 28 U.S.C. § 1920.

Under § 1920, the following costs are taxable against the losing party:

(1)    Fees of the clerk and marshal;

(2)    Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3)    Fees and disbursements for printing and witnesses;

(4)    Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)    Docket fees under section 1923 of this title;

(6)    Compensation of court appointed experts, compensation of

---

[16]    Stern's billing records also reflect non taxable costs totaling $1,350.00. [ECF No. 33-1, p. 52]. But, Stern's motion seeks only taxable costs. [ECF No. 33, p. 21 ("request[ing] [that] the Court award [Dominguez] reasonable attorneys' fees in the amount of $28,405.00, and **costs in the amount of $402.00**"]. Therefore, the Court will not address non-taxable costs in this Order.

> interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

The Court is limited to taxing only those costs specifically authorized by statute. *E.E.O.C v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000) (citing *Crawford Fitting Co.*, 482 U.S. at 445). Because filing fees are taxable under section 1920(1), the Undersigned will award Plaintiff $402.00 in costs.

## V.      Conclusion

Based on the foregoing, Plaintiff's request for attorney's fees and costs is **granted in part and denied in part**. The Court will enter a separate judgment of **$11,960.00** in attorney's fees and **$402.00** in costs.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 16, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>**Copies furnished to**</u>:
All counsel of record